**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF<br><br>Moon Valley Country Club<br><br>    Debtor,<br><br>_____<br><br>MV AZ, LLC,<br>    Appellant,<br><br>v.<br><br>Moon Valley Country Club,<br>    Appellee. | No. CV13-00916-PHX-DGC<br>BK No. 2:12-BK-16548 JMM<br><br>**ORDER** |

Appellant MV AZ, LLC ("MVAZ") appeals an order from the U.S. Bankruptcy Court for the District of Arizona confirming the First Amended and Restated Plan of Reorganization of Moon Valley Country Club. Doc. 1. Appellee Moon Valley Country Club ("MVCC") has moved to dismiss the appeal on mootness grounds. Doc. 27. The appeal and motion to dismiss are fully briefed. Docs. 31, 35, 40, 41, 47. For reasons set forth below, the Court will grant Appellee's motion and dismiss the appeal.[1]

---

[1] The parties' requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. Background.

MVCC is a 50-year-old private country club with approximately 900 members.[2] MVCC owns 183-acres of land that includes a 46,178 square-foot clubhouse, a 43,192 square-foot fitness facility, an Olympic-size swimming pool, eight lighted tennis courts, an 18-hole golf course, an executive 18-hole par-three golf course, a 5,946 square-foot maintenance facility, and a 558-vehicle parking lot. In 2008, MVCC borrowed approximately $6 million from National Bank of Arizona ("NBAZ") secured by liens on MVCC's real property, equipment, and certain related collateral. Shortly thereafter, MVCC experienced substantial economic difficulties and defaulted on the NBAZ loan.

In December 2011, MVAZ, which is controlled by land developer Jerry Tokoph, purchased the defaulted loan from NBAZ for approximately $3 million. To avoid foreclosure by MVAZ, MVCC filed for Chapter 11 Bankruptcy protection on July 25, 2012. BkDoc. 1.[3] The bankruptcy court declined to confirm the initial reorganization plan due to valuation issues concerning MVAZ's note, and MVCC filed a First Amended and Restated Plan of Reorganization on March 19, 2013 (the "Plan"). BkDoc. 242.

The Plan called for MVCC to restructure from a non-profit to a for-profit corporate entity with new equity interests in the Reorganized Debtor being issued to Moon Valley Acquisition LLC ("MVA"). In return for this equity interest, MVA provided a $2 million capital contribution to MVCC. The Plan included more than $1.6 million in voluntary contributions from MVCC members and neighbors, for which the contributing parties received no equity interest or other services. The Plan called for the

---

[2] MVCC is the Debtor in the bankruptcy action. After the bankruptcy court confirmed the Plan, the Debtor reorganized. The parties' briefing refers to this new entity as the "Reorganized Debtor." Because MVCC is the Appellee, the Debtor, and the Reorganized Debtor, and to avoid confusion, the Court will generally use "MVCC" to refer to Appellee, Debtor, and Reorganized Debtor unless the party designation is particularly significant, in which case, the Court will refer to MVCC as either "Appellee," "Debtor" or "Reorganized Debtor."

[3] The Court uses "BkDoc" to refer to documents in the bankruptcy court's docket at *In re Moon Valley Country Club*, No. 2:12-bk-16548-JMM.

total $3.6 million capital infusion to be used to pay back certain classified creditors and to allow for MVCC's restructuring. The Plan valued MVAZ's note at $6 million and provided that a $2.5 million principal payment would be made to MVAZ on the Plan's effective date. The Plan provided that MVAZ's note would bear interest at five percent per annum and that the remaining $3.5 million balance would be paid off in monthly installments over ten years. For the first two years, MVAZ would receive interest-only payments, and for the following eight years MVAZ would receive principal and interest payments calculated on a 20-year amortization of the remaining $3.5 million balance, with a final balloon payment due at the end of that eight-year period.

MVAZ objected to the Plan on various grounds, including an assertion of its right to credit bid on the sale of MVCC assets to MVA. As to MVAZ's assertion of a right to credit bit, the bankruptcy court found that regardless of whether the equity transfer to MVA constituted a sale, MVAZ had no statutory credit bid right because the Plan allowed it to retain its lien on the secured property until paid, and MVAZ failed to make a 11 U.S.C. § 1111(b) election. The bankruptcy court confirmed the Plan over MVAZ's objection on May 1, 2013. BkDocs. 303 & 304. The bankruptcy court and this Court denied MVAZ's motions for a stay pending appeal (BkDoc. 318, Docs. 13, 17), and the Plan went into effect on May 24, 2013 (the "effective date").

Before the effective date, MVA had made its $2 million payment and MVCC members and neighbors contributed $1,618,873.24. On the Plan's effective date, MVAZ received a $2.5 million payment and payments were made to other MVCC creditors, including $296,261 paid to Maricopa County for all past due real property taxes and additional payments for professional fee and administrative claims. MVCC completed its reincorporation and now operates under amended articles of incorporation, with new directors and officers, and as a for-profit corporation. MVCC has also amended its membership bylaws since the effective date. Additionally, MVCC finalized a new management agreement with a third-party property management company, and that

company now oversees MVCC operations, including the continued employment of 125 employees.

## II.     Appellee's Motion to Dismiss Appeal.

Appellee argues that Appellant's appeal should be dismissed because it is both constitutionally and equitably moot. Doc. 27 at 11.

### A.     Constitutional Mootness.

An appeal is not constitutionally moot if the appellate court can give the appellant some form of effective relief in the event that it decides the matter on the merits in its favor. *See In re Thorpe*, 677 F.3d 869, 880 (9th Cir. 2012) (citing *Flester Pub'g v. Burrell*, 415 F.3d 994, 998 (9th Cir. 2005)). Appellee argues that 11 U.S.C. § 363(m) forecloses any possible relief. Doc. 27 at 12. Section 363(m) provides that "when a sale of assets is made to a good faith purchaser, the reviewing court may not modify or set aside the sale unless the sale was stayed pending appeal." *Dexter Distributing Corp. v. Amp*, No. CV-09-1099-PHX-JAT, et. al., 2010 WL 1052828, at *1 (D. Ariz. Mar. 18, 2010) (interpreting § 363(m)). The Court cannot find that § 363(m) applies or would foreclose relief in the event the appeal is decided in Appellant's favor because the bankruptcy court did not find that the Plan included a § 363 sale. Accordingly, the Court concludes that the appeal is not moot on this ground.[4]

### B.     Equitable Mootness.

The doctrine of equitable mootness "has some sway in bankruptcy cases where public policy values the finality of bankruptcy judgments because debtors, creditors, and third parties are entitled to rely on a final bankruptcy court order." *Thorpe*, 677 F.3d at 880 (citing *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172 (9th Cir. 1988) (other citations omitted)). To determine whether an appeal is equitably moot in the Ninth

---

[4] It is unclear if Appellee is arguing that the appeal is moot on constitutional or statutory grounds (Doc. 35 at 3-4; Doc. 41 at 11), but this ambiguity is inconsequential because the Court has concluded that § 363(m) is not applicable. The Court finds that the appeal is not constitutionally moot because the Court could reverse plan confirmation or require plan modification. *See Thorpe*, 677 F.3d at 880.

Circuit, (1) the court will first look at whether a stay was sought, for absent that a party has not fully pursued its rights; (2) if a stay was sought and not gained, the court will then look to whether substantial consummation of the plan has occurred; (3) the court will then look to the effect the a remedy may have on third parties not before the court; and (4) the court will look to whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court. *Id.* at 881. The Court will address each of these factors.

First, a stay was sought by Appellant in the bankruptcy court and this Court. Appellant's failure to obtain a stay allowed for reorganization to proceed under the Plan, but "failure to obtain a stay does not require a conclusion of equitable mootness where parties use due diligence in seeking the stay." *See Thorpe*, 677 F.3d at 881. Because Appellant diligently sought a stay, the Court will turn to the other factors to decide whether equitable mootness applies. *See id.* at 881-82 ("The failure to gain a stay is one factor to be considered in assessing equitable mootness, but is not necessarily controlling.").

Second, the Court must consider whether substantial consummation of the Plan has occurred. "The Bankruptcy Code defines substantial consummation as: (a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan." *Id.* at 882 (citing 11 U.S.C. § 1101(2)). The parties do not dispute that the Plan has been substantially consummated. *Compare* Doc. 27 at 15-17 *with* Doc. 33 at 7. The reorganization has been completed. All MVCC property has been transferred to the new entity governed by new officers and directors; payments called for under the plan have been made to MVAZ, the County, estate professionals, and a variety of creditors; a management contract has been signed

and implemented, with post-petition monthly expenses of $500,000 being incurred; membership agreements have been revised; and new members have signed agreements.

Third, the Court "must evaluate 'whether modification of the [Plan] would bear unduly on the innocent.'" *Thorpe*, 677 F.3d at 882 (quoting *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955, 961 (7th Cir. 1997)). "[T]he question is not whether it is possible to alter a plan such that no third party interests are affected, but whether it is possible to do so in a way that does not affect third party interests to such an extent that the change is inequitable." *Id.*

Appellee submits that granting Appellant relief "would adversely and inequitably affect literally hundreds of third parties that have relied on the finality of the Confirmation Order." Doc. 27 at 17. Approximately 590 MVCC members and non-member neighbors contributed $1,618,873.24 to the Plan because they wanted "[t]o preserve their neighborhoods from the effects of a foreclosure and subsequent fight regarding development efforts by [MVAZ]." *Id.* at 8. Appellee argues that since the Plan was put into effect, 125 MVCC employees have continued their employment with the club, more than 900 members have entered into new MVCC memberships, 22 new members have joined, the County has been paid more than $296,000 in past due property taxes, estate professionals have been paid, a variety of creditors have been paid, vendors have supplied goods and services to MVCC on credit, new officers and directors have been appointed for MVCC, and MVCC has entered into a new management agreement with a third-party to manage the club.

Appellant submits that if the Court reversed the confirmation order, MVCC's employees would continue to be employed, its members could continue with their memberships, and its vendors would be entitled to payment in the ordinary course as administrative propriety claims from the bankruptcy estate. Doc. 35 at 9. But Appellant does not state that MVCC would continue to operate. To the contrary, Appellant has specifically objected to the fact that MVCC limited its search for solutions "to potential

- 6 -

purchasers that would commit to maintain the club's operations as a private country club, and provide for the transfer for existing memberships to the new club." Doc. 24 at 8. Elsewhere, Appellant described the MVA contribution and MVCC equity transfer as a way for members to transfer "their club to a friendly party that committed in perpetuity not to disrupt their country club lifestyle." Doc. 35 at 10-11. Given these criticisms, the Court finds Appellant unlikely to maintain MVCC's operations, creating the distinct possibility that reversal of the Plan confirmation would result in MVCC no longer operating, which in turn would upset third parties' reliance on MVCC's continued operations.

More importantly, the relief MVAZ seeks on appeal is to permit it to credit bid on the property. Such a bid, which would be in the amount of the $6.5 million in debt owed on the note MVAZ purchased, would almost certainly be higher than competing bids given that the total amount raised through the various plan iterations in the bankruptcy court was $3.6 million. And a credit bid of $6.5 million would infuse no new cash into MVCC; MVAZ would simply bid the debt it is owed. MVAZ does not explain how such a bid could result in repayment of the $2 million already paid under the Plan by MVA or the more than $1.6 million paid under the Plan by more than 500 neighbors and members of MVCC. MVAZ states simply that these contributions could be unwound and repaid, but never addresses the fact that more than $400,000 of these contributions have been paid to the County, estate professionals, equipment creditors, holders of convenience claims, and holders of general unsecured claims. MVAZ cites a case for the proposition that estate professionals can be required to disgorge payments, but cites no authority for requiring disgorgement of more than $296,000 in back taxes paid to the County or other funds paid to numerous other creditors. The Court concludes that unwinding the Plan would adversely affect numerous third parties not before the Court.

Fourth, the Court must consider whether, on remand, the bankruptcy court could devise an equitable remedy. As noted above, Appellant does not seek modification to

discrete provisions of the Plan, but instead seeks to overturn the Plan entirely. Appellant submits that the bankruptcy court could find an appropriate remedy, and specifically proposes that the bankruptcy court "could simply reconvene the confirmation hearing and require that MVAZ be permitted to credit bid as a condition of confirming the plan of reorganization." Doc. 35 at 5-6. But as noted above, doing so would result in MVAZ acquiring MVCC and its assets with no new funds being infused, and the bankruptcy court would be left with the impossible task of trying to recoup hundreds of thousands of dollars from a wide array of entities in order to refund money already distributed under the Plan. The Plan may not be a "complex, billion-dollar affair that has affected 'innumerable' third parties," *In re Focus Media, Inc.*, 378 F.3d 916, 923 (9th Cir. 2004) (quoting *Baker & Drake*, 35 F.3d at 1351-52)), but the Court is certain that unwinding it would create substantial difficulties for the bankruptcy court and make reconstructive relief extremely improbable. *See In re Pub. Serv. Co. of N.H.*, 963 F.2d 469, 474 (1st Cir. 1992).

Considering all of the relevant factors, the Court concludes that "a 'comprehensive change of circumstances' has occurred so 'as to render it inequitable for this [C]ourt to consider the merits of the appeal.'" *Thorpe*, 677 F.3d at 880 (quoting *In re Roberts Farms*, 652 F.2d 793, 798 (9th Cir. 1981)). The Court accordingly will grant the motion to dismiss this appeal on grounds of equitable mootness.

**IT IS ORDERED:**

1. Appellee's motion to dismiss the appeal (Doc. 27) is **granted**.
2. The Clerk shall terminate this action.

Dated this 10th day of September, 2013.

_____
David G. Campbell
United States District Judge

- 8 -